# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| OPTICURRENT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:21-cv-00159-JRG-RSP |
| | § | |
| BITFENIX CO. LTD., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION

Before the Court is the Motion to Transfer, filed by Defendant Bitfenix Co. Ltd.. Dkt. No. 22.[1] Defendant moves the Court, pursuant to 28 U.S.C. § 1404(a), to transfer the above-captioned matter to the Northern District of California ("NDCA"). *Id*. at 5.[2] Defendant is a Taiwanese company with no presence in California, while Plaintiff is a Texas company also with no presence in California.

## I.   BACKGROUND

On June 10, 2021, Plaintiff Opticurrent, LLC filed the present lawsuit accusing Defendant of infringing U.S. Pat. No. 6,958,623 ("'623 Patent"). Dkt. No. 1. This is not, however, the first instance the '623 Patent has been asserted in Eastern District of Texas. *See Opticurrent v. Power Integrations*, 2:16-cv-325-JRG (E.D. Tex.) ("*Opticurrent* I"); *Opticurrent, LLC v. Mouser Electronics*, 2:16-cv-01180-JRG (E.D. Tex.) ("*Opticurrent* I"). In *Opticurrent* I, defendant Power Integrations (PI") successfully moved the Court to transfer the case to NDCA. *Opticurrent* I, Dkt.

---

[1] On December 12, 2021, Defendant filed the Motion. Dkt. No. 22. On December 17, 2021, Plaintiff filed its response. Dkt. No. 32. On December 27, 2021, Defendant filed its reply. Dkt. No. 33. On January 3, 2022, Plaintiff filed its sur-reply. Dkt. No. 34.
[2] Citations are to document numbers and page numbers assigned through ECF.

No. 68, (E.D. Tex. May 26, 2017). It is worth noting that prior to transfer, the Court held a lengthy hearing and entered claim constructions for the disputed terms in '623 Patent. *Opticurrent* I, Dkt. No. 58 (E.D. Tex. Apr. 18, 2017). That transferred case proceeded to a jury trial, a final judgment was entered, and is currently on appeal before the Federal Circuit. Meanwhile, *Opticurrent* II was stayed pending the outcome of the transferred *Opticurrent* I case.

Plaintiff alleges that "Defendant has made, used, imported, sold, or offered for sale the Whisper Series 550W power supply unit product which incorporates one or more of Power Integrations, Inc.'s products that have been adjudged as infringing claim 1 of the '623 Patent." Dkt. No. 1 at 7. In other words, Plaintiff contends that Defendant has incorporated a PI product in a manner that it considers to be infringing the '623 Patent.

## II.   LEGAL STANDARD

If venue is proper in the district where a case was originally filed, a federal district court may transfer the case "[f]or the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*"). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *See id* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See Volkswagen I*, 371 F.3d at 203; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer. *See Volkswagen II,* 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

If that inquiry is satisfied, the Court determines whether transfer is proper by analyzing and weighing various private and public interest factors. *Id.*; *accord In re Nintendo Co., Ltd*, 589, F.3d 1194, 1198 (Fed. Cir. 2009); *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id*.

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *See id*. Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 314-15; *Apple*, 979 F.3d at 1338. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 U.S. Dist. LEXIS 206019, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable

inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

### III. ANALYSIS

#### A. Threshold Inquiry Under § 1404

Under § 1404, the Court must initially address whether this case could have been brought in the proposed transferee forum. *See Volkswagen I*, 371 F.3d at 203 ("[W]e have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."); *Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). At best, the parties gave this issue cursory attention. Defendant, however, failed to articulate whether the Northern District of California is a proper transferee forum.

In the Motion, Defendant states "Opticurrent has taken the position that 'Defendant is not a resident of the United States and may be sued in any district, including this District.' Accordingly, Opticurrent could have brought this action in the transferee district, and the threshold inquiry is satisfied." Dkt. No. 22 at 11–12 (citation omitted). Defendant has not met its statutory burden. *See Japan Display Inc. v. Tianma Microelectronics Co.*, 2:20-cv-00283-JRG, 2021 U.S. Dist. LEXIS 160256, *8 (E.D. Tex. Aug. 25, 2021). Merely repeating Plaintiff's pleaded theory on venue is insufficient for this Court to determine whether this lawsuit "might have been brought" in the Northern District of California. *Id*. at *8–9. Indeed, Defendant's statements are "not a concession to the jurisdiction of the transferee court" and Defendant has not indicated whether

4

Northern District of California could have been a proper forum for this action. *See Japan Display*, 2021 U.S. Dist. LEXIS 160256 at *8–9. In addition, not only has Defendant failed to indicate the propriety of its proposed venue, it has failed to state whether the transferee court has personal jurisdiction over Defendant. As in *Japan Display*, there is no indication whether Defendant concedes it is subject to personal jurisdiction in every U.S. District Court—or otherwise admits that it is subject personal jurisdiction in the Northern District of California. *See id*. at 9.

Defendant misunderstands the focus of this threshold inquiry, namely determining whether this case "might have been brought" in the transferee forum—not whether if Plaintiff's theory of venue is correct then this matter "might have been brought" elsewhere. In other words, Defendant must affirmatively show that the suit "might have been brought" in the Northern District of California, not merely argue that under Plaintiff's theory the case "might have been brought" in the transferee forum. Defendant may not seek transfer while preserving the option to challenge jurisdiction after transfer. Without knowing, or being able to infer, whether this lawsuit could have been brought in the transferee court the Court must deny the Motion.

Accordingly, the Motion is **DENIED** based on Defendant's failure to meet the basic threshold requirement of § 1404(a). *See id*. at 10; *See also In re accessiBe Ltd.*, No. 2022-113, 2021 U.S. App. LEXIS 35858, *2-3 (Fed. Cir. Dec. 6, 2021) (nonprecedential) ("Having found that the threshold requirement for transfer had not been established, the district court did not analyze the relevant private and public transfer factors.").

### B.    Convenience Factors

Even if Defendant had adequately met its burden, it has not shown that the Northern District of California is clearly more convenient under the private and public interest factors.

#### a.    Private Interest Factors

##### i.    Relative Ease of Access to Sources of Proof

Defendant asserts this factor weighs in favor of transfer because the bulk of documentation related to PI's products, which are alleged to be the basis of this suit, are in the Northern District of California. Dkt. No. 22 at 12–13. However, Defendant states that much of the documentation related to manufacturing and testing of PI's products is in Asia. Dkt. No. 22 at 12. Defendant appears to give no weight to any of its own sources of proof despite acknowledging its own documentation, which is specifically related to the accused products, is both relevant and located abroad, and thus just as accessible from Texas as from California.

Plaintiff, however, contends this factor weighs against transfer "[g]iven that the potential realm of relevant documents are either abroad or in electronic form that was produced by Opticurrent and Power Integrations in a prior case." Dkt. No. 32 at 11. Plaintiff states that "the relevant documents that Opticurrent has are already located in Fort Worth, Texas at the offices of its outside counsel which is a relatively short distance from" Marshall. *Id*. at 10. In particular, Plaintiff points out that "the relevant documents from Mr. Congdon related to conception and reduction to practice of the invention. . . [,] documents related to licensing of the same" and any "documents from Power Integrations [that] are relevant to this case . . . [were] previously produced to Opticurrent" and are in Fort Worth, Texas. *Id*.

6

This factor considers "documents and physical evidence" not witnesses. *See Volkswagen II*, 545 F.3d at 315; *Apple*, 979 F.3d at 1339-40.[3] Both the Fifth and Federal Circuits have stressed the importance of the physical location of the sources of proof despite technological advances in data storage and transmission. *See Volkswagen II*, 545 F.3d at 316; *In re Genentech*, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009). "[T]he realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor superfluous." *Japan Display*, 2021 U.S. Dist. LEXIS 160256 at *13 (quotations omitted).

Defendant acknowledges this case is not only about PI's products being used in the accused products, but that "a key new issue will be how BitFenix *uses* PI's chips." Dkt. No. 33 at 3 (citing Dkt. No. 1 ¶ 16). Thus, Defendant's attempt to deflect the importance of its own documentation, likely in Taiwan, is not well taken. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (citation omitted). Defendant admits that documentation related to how it uses the PI products will be central to the merits of this case and that these documents are located abroad—yet inexplicably gives no weight to these sources of proof. *See* Dkt. No. 33 at 3; Dkt. No. 22 at 12. Plaintiff also contends that its own documents related to conception and reduction to practice are located with outside counsel in Fort Worth, Texas, which is significantly closer to Marshall. Dkt. No. 32 at 11. Though there may be some sources of proof located in the Northern District of California, Plaintiff keeps many (if not most) of those documents in Fort Worth, Texas. The Court finds this factor to weigh slightly against transfer, in view of the significant documents located abroad, the minimal value of any

---

[3] Defendant spends a sizable amount of its reply brief discussing the importance of witness location in the section examining the ease of access to sources of proof factor. *See* Dkt. No. 32 at 9–10. The Court will disregard those arguments with respect to ease of access to sources of proof factor but will consider those arguments in connection with the relevant witness factors.

7

non-duplicative sources of proof located in the Northern District of California, and that many relevant documents are in Fort Worth, Texas.

### ii. Availability of Compulsory Process to Secure the Attendance of Witnesses

Defendant does not state whether there are any witnesses that the Court should consider in connection with this factor. Defendant instead asserts that compulsory process is not necessary. Dkt. No. 22 at 15 ("While third party PI's witnesses are likely to appear voluntarily, this factor also favors transfer."); Dkt. No. 33 at 5 ("BitFenix acknowledged PI's witnesses are likely to appear voluntarily, so this factor is less important, but it does slightly favor transfer given the subpoena power in California."). "This factor is directed towards unwilling third-party witnesses." *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019). Defendant has not identified any unwilling witnesses for the Court to consider. The Court finds this factor is neutral.

### iii. Cost of Attendance for Willing Witnesses

Defendant argues this factor weighs toward transfer because the conveniences of the "main non-party witnesses" should control the Court's analysis. *See* Dkt. No. 22 at 14. Defendant also maintains that it would be easier for its own witnesses in Taiwan to travel to California rather than Texas. *Id*. Plaintiff submits that its primary witness, Mr. Brunell, lives in Florida and that two other third-party inventor witnesses live in Massachusetts. Dkt. No. 32 at 13. Plaintiff also asserts that the difference between Defendant's inconvenience from travelling to San Francisco versus Marshall should be given little weight because the travel will be quite substantial to either venue. *Id*. ("[T]here is no basis for BitFenix to assert that travel of its employees from Taiwan to Northern California is more convenient than travel to Marshall in any material way . . . the 100-mile rule

should not be rigidly applied where witnesses will have to travel a significant distance no matter where they testify." (citing *Genentech*, 566 F.3d at 1344)).

The cost of attendance for willing witnesses factor has been described as the most important factor to weigh. *See id*. at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). Courts properly give more weight to the convenience of non-party witnesses than to party witnesses. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012). The Fifth Circuit uses what is known as the "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343; *Apple*, 979 F.3d at 1341.

There are two groups of parties to consider: the non-party witnesses and the party witnesses. The convenience of non-parties generally given more weight, *Frito-Lay*, 867 F. Supp. at 870-71, so the Court will begin its analysis with this group.

Defendant identifies two non-party witnesses[4] and Plaintiff also identifies two non-party witnesses. *Compare* Dkt. No. 32-3 at 4 *and* Dkt. No. 33 at 2–3 *with* Dkt. No. 32 at 12–13. Defendant's two non-party witnesses reside in California and Plaintiff's two non-party witnesses reside in Massachusetts. *Compare* Dkt. No. 32-3 at 4 *with* Dkt. No. 32 at 13. Having the witnesses testify in San Francisco would require Plaintiff's non-party witnesses to travel from Massachusetts

---

[4] Though Defendant generally cites to "non-party" PI witnesses, Defendant does little else in the way of providing any names or locations of these PI witnesses. The only indication of the identity of the PI witnesses are in Defendant's Rule 26(a) disclosures. Dkt. No. 32-3; Dkt. No. 33 at 2–3 ("The PI witnesses that BitFenix has listed—Mike Matthews and Roland Saint-Pierre—were not witnesses in the previous case. These new PI witnesses are relevant to this case because they are knowledgeable about how PI's chips are used in power supplies."). Defendant identifies two PI witnesses (whose addresses are withheld) as having relevant knowledge to the present suit. Dkt. No. 32-3 at 4. The Court will decline to opine on who, other than the witnesses Defendant considers relevant, would be relevant to the present suit. Though the addresses of these witnesses are omitted, the Defendant does assert they reside in the Northern District of California. The Court will assume that these witnesses reside in the Northern District of California.

to San Francisco, which would likely mean the witnesses would "have to leave home for an extended period of time and incur travel, lodging, and related costs," while the Defendant's non-party witnesses would be able to avoid the inconvenience. *Apple*, 979 F.3d at 1342. On the other hand, having the witnesses testify in the Marshall would require Plaintiff's non-party witnesses travel from Massachusetts to Marshall, which would still mean a non-trivial amount of time and expense and Defendant's non-party witnesses would also have to travel and "have to leave home for an extended period of time and incur travel, lodging, and related costs." *Id*. Though Plaintiff's non-party witnesses would incur less inconvenience by travelling to Marshall rather than San Francisco "in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs," *Id.;* whereas Defendant's non-party witnesses would incur little inconvenience in the transferee forum.

As to the party witnesses, Defendant identifies one witness[5] and Plaintiff identifies one witness. Defendant's party witness resides in Taiwan and Plaintiff's party witness resides in Celebration, Florida (a suburb of Orlando). *Compare* Dkt. No. 32-3 at 4 *with* Dkt. No. 32 at 13. "The convenience of foreign corporations is generally given little weight, [but] it is still relevant." *In re Atlassian Corp. PLC*, No. 2021-177, 2021 U.S. App. LEXIS 33790, *9 (Fed. Cir. Nov. 15, 2021) (citation omitted) (quotations omitted). Since the witness from Taiwan will be required to travel a significant distance no matter where they testify the focus will be on the relative convenience of Plaintiff's party witness. *Genentech*, 566 F.3d at 1344. Plaintiff's witness lives close to Orlando, Florida, which is much closer to Marshall than to San Francisco. The relative closeness to Marshall, the ease of travelling to the Dallas-Fort Worth airport and driving to

---

[5] Defendant only identifies Defendant's CEO as having relevant knowledge. Dkt. No. 32-3 at 4. Though no address is provided for him, since the Defendant is a Taiwanese organization the Court will infer that the identified witness lives in Taiwan. *See Vocalife*, 2019 WL 6345191 at *2.

10

Marshall—or in the alternative flying to into Shreveport airport—is more convenient than flying from Orlando to San Francisco. In this case, there is an increased inconvenience associated with travelling to San Francisco, which requires close to six hours of travel time.

Considering the convenience for Defendant's non-party witnesses in the transferee location, the minimal convenience to Defendant's party witness as to either location, and the slight convenience to the Plaintiff's party witness in this venue, the Court finds that this factor slightly favors transfer.

### iv. All Other Practical Problems That Make Trial of Case Easy, Expeditious, and Inexpensive

Defendant appears to have blended its arguments directed to the practical problems private interest factor and court congestion public interest factor. Dkt. No. 22 at 16. Defendant briefly states that "while court congestion and judicial familiarity with patent law are similar in this District and the Northern District of California, the key factor favoring the Northern District of California is Judge Chen's deep involvement with the ongoing cases there against PI." *Id*. Plaintiff responds by asserting that this factor strongly weighs against transfer because this Court is familiar with the '623 Patent and has issued claim constructions on it. Dkt. No. 32 at 13–14.

"Practical problems include those that are rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446-LED, 2010 U.S. Dist. LEXIS 104125, *27 (E.D. Tex. Sept. 28, 2010) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)) ("*Volkswagen III*"). This Court is familiar with the asserted patent. Judge Gilstrap performed the claim construction for the '623 Patent. *Opticurrent* I, Dkt. No. 58 (E.D. Tex. Apr. 18, 2017). Shortly after the claim construction in *Opticurrent* I the case was transferred. *See Opticurrent* I,

11

Dkt. No. 68, (E.D. Tex. May 26, 2017). That claim construction, however, was adopted by the Northern District of California and affirmed by the Federal Circuit. *See* Dkt. No. 32 at 5–6.

Though the Northern District of California continued the ligation of the PI case, this Court has substantial experience with the patent-in-suit based on the prior litigation— "which included a hearing and lengthy opinion construing various claim terms." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). This case presents newly accused products and a new Defendant, which both Courts are unfamiliar with. The primary overlap between this case and *Opticurrent I* is the '623 Patent, which this Court construed in *Opticurrent I* and is presently asserted in *Opticurrent II*. The Court sees very little judicial economy to be gained by transfer to the Northern District of California, since many of the issues presented in this case will likely be presented in the *Opticurrent II* case, which will necessarily require this Court to continue dealing with the '623 Patent. *See Vistaprint*, 628 F.3d at 1343. Thus, when weighing this Court's familiarity with the asserted patent, the Northern District of California's familiarity with the PI litigation, co-pending related litigation here concerning similar issues decided in *Opticurrent I*, and both Courts' unfamiliarity with respect to Defendant's accused products, the Court finds that this factor is neutral.

          **b.**    **Public Interest Factors**

                  **i.**    **Administrative Difficulties Flowing from Court Congestion**

As discussed above, Defendant blended parts of its arguments related to the private and public factors. The Court will not reiterate Defendant's arguments. *See* Dkt. No. 22 at 16. Plaintiff, on the other hand, counters that "the median time from filing to trial in civil actions was 20.4 months" contrasted against "the Northern District of California in which [has a] median time to trial in civil cases . . . [of] 26.9 months." Dkt. No. 32 at 15.

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347.[6] Speedy adjudication is important not only for Plaintiff's timely enforcement of patent rights, *Saint Lawrence Communs. LLC v. ZTE Corp.*, No. 2:15-cv-00349-JRG, 2017 U.S. Dist. LEXIS 84290, *11 (E.D. Tex. Jan. 17, 2017), but meaningful for both parties to minimize costs associated with lengthy and costly patent litigation. Six or more months will certainly increase costs associated with litigation and prejudice both parties. The Court finds this factor weighs slightly against transfer.

### ii.     Local Interest

Defendant argues local interest factor weighs in favor of transfer because the Northern District of California has a "strong interest in the outcome" of this case and no Eastern District of Texas witnesses or residents are implicated by the outcome of this case. Dkt. No. 22 at 15. Defendant states the local interest in the Northern District of California is particularly acute because "PI's chips are at the heart of this case." *Id*. Plaintiff asserts the local interest factor is neutral since neither of the parties has a direct tie to either district. Dkt. No. 32 at 16. Plaintiff contends "this litigation is primarily concerned with activities that have no specific nexus in either the Eastern District of Texas or the Northern District of California." *Id*.

Plaintiff is correct, neither of the parties in the current litigation have any ties to the Northern District of California or the Eastern District of Texas. There is no local interest for either party in either district. This factor is neutral.

---

[6] Though this factor has been characterized as "speculative" it still merits consideration. *Genentech*, 566 F.3d at 1347 ("We do not disturb the district court's suggestion that it could dispose of the case more quickly than if the case was transferred to the Northern District of California. We note that this factor appears to be the most speculative . . . ."); *but see Apple Inc.*, 979 F.3d at 1344.

### iii. Remaining Public Interest Factors

Other than a cursory statement that the remaining public interest factors weigh in favor of transfer, Defendant does not specifically argue whether the remaining public interest factors weigh in favor of transfer. Plaintiff at least directs argument to these factors and contends that these remaining factors are neutral. The Court finds that the remaining factors are neutral.

## IV.  CONCLUSION

The Defendant failed to carry it burden to establish even the bare threshold transfer prerequisite.  This alone serves as a basis for denial.

Additionally, there is one convenience factor slightly favoring transfer and two factors slightly disfavoring transfer, therefore, movant has failed to show that the Northern District of California would be a clearly more convenient venue.

Accordingly, the Motion to Transfer (Dkt. No. 22) is **DENIED**.

**SIGNED this 25th day of February, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

14